Frank Pollock v. Commissioner.
Pollock v. Commissioner
Docket No. 40503.
United States Tax Court
T.C. Memo 1956-130; 1956 Tax Ct. Memo LEXIS 165; 15 T.C.M. (CCH) 662; T.C.M. (RIA) 56130; May 25, 1956
*165 Albert J. O'Connor, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined deficiencies in income taxes, including victory tax for 1943, and additions thereto for fraud as follows: Calendar
Fraud
Year
Income Tax
Sec. 293(b)
1942
$ 2,096.24
$1,048.12
1943
4,702.07
2,351.04
1944
12,029.93
6,014.97
1945
2,955.92
1,477.96
1946
11,920.39
5,960.20
1947
1,757.33
1948
2,192.74
1,244.83 A deficiency in income tax determined for 1947 has been eliminated by the application of a net operating loss carry-back from 1949 and respondent determined an overassessment of $119 in income tax for 1947. No appearance at the hearing was entered by or on behalf of petitioner, and respondent's motions to dismiss the case insofar as it relates to deficiencies in income tax for the calendar years 1945, 1946 and 1948 were granted. Respondent introduced evidence to sustain his burden of proving fraud in each of the years and thereby extend the statute of limitations as to deficiencies determined for 1942, 1943 and 1944. Upon this evidence the following facts are found. Findings of Fact Petitioner *166 filed individual income tax returns for the calendar years 1942 through 1948 with the collector of internal revenue for the district of West Virginia. The returns for 1945 through 1948 were filed, respectively, on March 15, 1946, February 11, 1947, March 9, 1948, and June 15, 1949. Petitioner and respondent executed timely consents extending the period of limitation for assessment and collection of any deficiencies for 1945 and 1946 until June 30, 1953. The statutory notice was mailed to petitioner on January 31, 1952. Commencing in 1942 and continuing through 1949 petitioner was self-employed, originally as a tool, die and machine-shop operator under the name "Pollock Tool & Machine Company" and later as a manufacturer under the name "Brooke Manufacturing Company." Respondent's investigation of petitioner's returns for these years revealed that petitioner's records were not adequate or complete enough for audit purposes. With the exception of the year 1949, there were practically no records. There were no records of accounts receivable or payable, no supporting inventory records, no cash receipts or disbursements book, and no complete record of checks or invoices. Petitioner's returns *167 for 1948 and 1949, unlike those for earlier years, were prepared by an accountant. The return for 1949, filed September 15, 1950, contains a statement by the accountant that it was prepared from "incomplete records," and petitioner's protest, filed subsequently, refers to the reconstruction of petitioner's books for subsequent years. Respondent attempted to reconstruct income on the basis of canceled checks and invoices, but found this to be impracticable because a number of cash items were not put through the bank accounts and many of the checks were not available, particularly as to years prior to 1949. He thereupon reconstructed petitioner's income on the basis of the increase in petitioner's net worth plus nondeductible expenditures, which, together with the resulting increase in petitioner's net income, is as follows: 12-31-41
12-31-42
12-31-43
12-31-44
Checking accounts
$ 50.70
$ 536.47
$ 2,949.82
$20,109.69
Accounts with steel companies
( 24.00)
( 8,360.68)
Inventories
Series "E" Savings Bonds
56.25
131.25
131.25
Real estate
7,000.00
Depreciable assets
1,150.00
6,416.45
16,579.65
44,076.05
Depreciation reserve
( 143.75)
( 839.77)
( 3,048.13)
( 8,250.39)
Notes payable
( 3,200.00)
Other loans payable
(11,000.00)
Net worth
$1,056.95
$ 6,169.40
$16,588.59
$40,505.92
Net worth increase
$ 5,112.45
$10,419.19
$23,917.33
Add: Estimated living
6,000.00
6,000.00
7,000.00
expenses
Income taxes paid
698.87
( 445.24)
$11,112.45
$17,118.06
$30,472.09
Less: Carry-back of 1949
Operating loss
$11,112.45
$17,118.06
$30,472.09
Less: Deductible personal
expenses
Actual expenses
( 232.22)
Standard deduction
( 500.00)
Nontaxable portion of capital
gains
Net taxable income as
$11,112.45
$16,885.84
$29,972.09
corrected
*168 12-31-45
12-31-46
12-31-47
12-31-48
Checking accounts
$ 1,753.11
$ 3,247.56
$ 9,813.67
$ 2,021.62
Accounts with steel companies
( 83.46)
3,574.23
7,235.12
2,404.40
Inventories
90.50
18,397.50
14,500.00
11,520.63
Series "E" Savings Bonds
131.25
131.25
131.25
131.25
Real estate
10,600.00
12,600.00
10,600.00
10,600.00
Depreciable assets
60,764.27
92,392.55
106,853.10
135,011.89
Depreciation reserve
(12,931.39)
(22,959.89)
(30,474.40)
(40,504.94)
Notes payable
(20,617.98)
(20,905.40)
(14,700.60)
Other loans payable
(14,000.00)
(16,500.00)
(20,500.00)
(19,500.00)
Net worth
$46,324.28
$70,265.22
$77,253.34
$86,984.25
Net worth increase
$ 5,818.36
$23,940.94
$ 6,988.12
$ 9,730.91
Add: Estimated living
7,000.00
8,000.00
9,000.00
9,000.00
expenses
Income taxes paid
340.60
119.00
$13,158.96
$31,940.94
$15,988.12
$18,849.91
Less: Carry-back of 1949
Operating loss
(15,988.12)
( 1,624.74)
$13,158.96
$31,940.94
$0
$17,225.17
Less: Deductible personal
expenses
Actual expenses
Standard deduction
( 500.00)
( 500.00)
( 1,000.00)
Nontaxable portion of capital
( 278.12)
( 21.87)
gains
Net taxable income as
$12,380.84
$31,419.07
$16,225.17
corrected
*169 The assets included in this net worth statement were determined as follows, a notice to produce petitioner's records relating to such accounts having been served later but not complied with: Bank account balances were obtained by verifying, from bank records, the existence of and the balances in the bank accounts at five banks mentioned by petitioner. Accounts with steel companies were in part discovered in the course of investigating petitioner's cash transactions. The assets balances in 1946, 1947 and 1948 represent funds deposited by petitioner with the steel companies to pay for future purchases of steel. The existence and amount of the account balances were verified from the steel company records. The amounts shown for inventories are the inventory figures reported in petitioner's income tax returns for the years in issue. These figures were adopted by respondent without change. The amounts shown for Series E Savings Bonds represent the total amount of such bonds, which were exhibited to the investigating agents by petitioner. On January 20, 1944, petitioner purchased for $5,500 property located in Brooke County, West Virginia. $4,500 of this total is shown as real *170 estate consisting of petitioner's personal residence in Follansbee and the remainder, representing a machine shop on the rear of the property, is shown under depreciable assets. Petitioner gave a deed of trust on this property in the amount of $3,000 at or about the same time. Respondent's investigation disclosed that $600 was paid on the deed of trust in 1944 at the rate of $50 monthly and the remainder was repaid in 1945. This deed of trust is shown in respondent's computation under notes payable in the amount of $2,400 as of December 31, 1944 and zero as of December 31, 1945. In 1944 petitioner purchased for $2,500 property located in Brooke County, and described as Lot 28, Chestnut Heights. Respondent's agents searched the public records of Brooke County, and the dates and amounts of the real estate transactions shown in the net worth computation were obtained therefrom and later verified with petitioner and the other parties to the transactions. Petitioner owned no real estate outside Brooke County. In his 1949 return, petitioner reported a sale of land, buildings, machinery and equipment, furniture and trucks having a total cost basis of $112,547.80 less depreciation of *171 $33,058. The amounts shown in the net worth computation for "depreciable assets" and "depreciation reserves" were taken from the work papers of the accountant who prepared the 1949 return. These were furnished to respondent's representatives in substantiation of the basis claimed in the 1949 return. Respondent adopted the cost figure furnished by petitioner without change. Respondent reduced the depreciation period for 1949 from 3 months to 2 months in 1949, but otherwise allowed the depreciation claimed by petitioner without change. The amount of the deduction for the nontaxable portion of capital gains allowed in respondent's computation of net income came from the same sources. The taxable portion of the capital gains was not reported as income by petitioner. Amounts shown for "notes payable" were obtained from conversations with petitioner and by checking leads furnished by him, including bank records and public records such as deeds of trust and conditional sales agreements. The amounts shown for "other loans payable" were obtained from conversations with petitioner and by checking leads furnished by petitioner. All such loans were from petitioner's relatives. Respondent's *172 net worth computation gives petitioner the benefit of all such liabilities claimed by petitioner with the exception of an alleged loan from Lotti Wilinski, his mother-in-law. When respondent attempted to verify this, petitioner's statements conflicted with one another and with those of Lotti Wilinski as to the date and amount of the alleged loan. The amounts of estimated living expenses are estimates by respondent arrived at after considering petitioner's admissions as to the number of his dependents and his admission that he maintained two households, one in Follansbee and one in Wellsburg. Petitioner admitted that he lived at the Follansbee household with his wife, whom he claimed as a dependent on his returns. They had two daughters, one of whom was claimed as a dependent in 1942 and 1943. Petitioner lived at the Wellsburg household with another woman and their four sons. All of the sons were claimed as dependents in his 1948 and 1949 returns and some of them were claimed in the earlier years. Respondent's agents visited both houses to verify petitioner's dependency claims and allowed all of the dependency claims. The starting point for respondent's net worth computation consists *173 of a checking account at the Citizens Bank of Follansbee and the depreciable assets found in the work papers furnished by petitioner. This is based upon the work of the investigating agents and includes everything they could find belonging to petitioner at the beginning of 1942, after asking petitioner what his assets and liabilities were at that time and checking the various leads furnished by him. A conference was held in December 1950, attended by petitioner and the investigating agents, and a memorandum was made of the subjects discussed at this conference. Petitioner stated that neither he nor his wife ever kept large amounts of cash on hand and that the only currency they kept on hand was that which they needed for personal spending and household money. Petitioner executed an affidavit to that effect. Petitioner was asked whether he had any bank accounts, real estate, United States Government bonds, bank loans or other liabilities, and his answers were verified by the investigating agents and included in the net worth statement. Petitioner stated that he had no insurance, or stocks or bonds other than Government bonds, and that he had no other assets in addition to the specific *174 categories mentioned except the plant and equipment. Neither petitioner nor his wife nor any of his children ever received any inheritances. His wife had no substantial separate estate at the time they were married and no independent source of income. In his returns for 1942 through 1948, petitioner claimed depreciation deductions and reported taxable net income as follows: Net
Depreciation
Taxable
Basis
Deduction
Income
Combined
Year
Claimed
Claimed
(Loss)
Total
1942
$ 9,691
$ 1,154
$ 1,795
$ 2,949
1943
26,000
5,200
2,973
7,973
1944
37,120
6,754
4,452
11,206
1945
37,120
6,754
( 14,952)
( 8,198)
1946
117,496
6,643
( 26,412)
(19,769)
1947
130,683
6,875
3,480
10,355
1948
90,878
10,168
6,181
16,349
$448,988
$43,348
($22,483)
$20,865
Petitioner substantially understated his net income in his returns for each of the taxable years 1942 through 1948. His returns for 1942 through 1944 were filed with an intent to evade tax, and some part of the deficiency in each of the years in controversy is due to fraud with intent to evade tax. Opinion Petitioner's consistent and substantial understatements *175 of income, as demonstrated by the net worth statements set forth in our findings, coupled with such other evidence as the absence of adequate records and failure to give any tenable explanation, suffices to establish a prima facie case of fraud which in this proceeding there has been no attempt to refute. See ; , certiorari denied ; , affd. (C.A. 10) . Our finding that petitioner's returns were fraudulent disposes of the only question in issue. It is no impediment to a determination of a fraud penalty that the original deficiency has been reduced by such a subsequent event as a net loss carry-back. ; , affd. (C.A. 1) . Decision will be entered for the respondent.